# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-3085

_____

Inacom Corp., a        *
Delaware corporation,        *
       *
            Appellee,        *    Appeal from the United States
       *    District Court for the
     v.        *    District of Nebraska.
       *
Sears, Roebuck and Company,        *
a New York corporation,        *
       *
            Appellant.        *
       *
       *

_____

Submitted: April 10, 2000
Filed: June 13, 2001

_____

Before BOWMAN and HANSEN, Circuit Judges, and CARMAN,[1] Judge.

_____

HANSEN, Circuit Judge.

___

[1]The Honorable Gregory W. Carman, Chief Judge, United States Court of International Trade, sitting by designation.

Following trial, a jury found that Sears, Roebuck and Company (Sears) had committed the tort of fraudulent concealment against Inacom Corporation (Inacom) and had breached a contract with Inacom. The jury awarded Inacom over $4.1 million in damages. The district court[2] awarded Sears over $1 million on its counterclaim and entered judgment in favor of Inacom for the difference. Sears appeals, and we affirm.

## I.

"We review the trial evidence in the light most favorable to the jury's verdict." Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1080 (8th Cir. 2000). Inacom, a company based in Omaha, Nebraska, is engaged in the retailing and servicing of personal computers, software, and networking products for large corporations. In 1992, Inacom's managers decided to investigate the possibility of purchasing Sears Business Centers (SBC) from Sears. SBC was an unincorporated division of Sears that generally engaged in the same type of business as Inacom.

During 1992, Inacom and Sears participated in negotiations regarding Inacom's purchase of SBC. In the midst of the negotiation process, Sears informed Inacom that SBC had a contract with the United States Department of Defense (DOD) whereby Sears had pledged to ship a specified number of D500, D1050 and D1075 model lap-held computers to the DOD within a delineated time frame. Inacom was not familiar with government contracting, but reluctantly agreed to accept the DOD contract as part of its overall acquisition of SBC but insisted that Sears provide written warranties concerning the status of Sears's contract with the DOD.

---

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

On January 12, 1993, Sears and Inacom signed a written Business Acquisition Agreement (BAA), which ratified the sale of SBC from Sears to Inacom. The BAA contained representations from Sears that it was not in material breach or default of its contract with the DOD and that Sears enjoyed a satisfactory relationship with the government with regard to the contract. Additionally, the BAA contained a provision entitled "Limitation on Recoveries," specifying that no party to the agreement would be entitled to recover consequential, exemplary or punitive damages with respect to disputes concerning the agreement. (Appellant's App. at 133.)

Transfer of the DOD contract created a slight wrinkle in the BAA. While Sears's attorney had advised that federal regulations only permit a transfer or assignment of a government contract with prior government approval, Sears did not obtain government approval for the transfer of its DOD contract prior to the closing date of the sale. As a result, the BAA provided that Sears and Inacom would enter into a written agency agreement governing performance under the DOD contract, and Sears agreed to promptly seek DOD approval of the actual assignment of the contract to Inacom. Pursuant to the agency agreement, Inacom pledged to assume responsibility for administering the DOD contract as Sears's agent and to ensure proper performance of all of Sears's obligations under the contract. Sears promised to indemnify Inacom for "any and all claims arising under the DOD contract," except to the extent any loss resulted from Inacom's failure to timely perform Sears's obligations under the DOD contract. (Appellant's App. at 486.)

On February 19, 1993, the DOD leveled a $1.8 million liquidated damages assessment against Inacom. The government asserted that Inacom failed to ship the lap-held computers to the DOD within the time-frame specified in the contract. Inacom informed the DOD that it could not fulfill its contractual obligations because Sears had discontinued the D500 and the D1075 model computers. Inacom negotiated with the DOD and offered the government a substitute model. The DOD informed Inacom that its proposed model was an insufficient replacement for the D500 and D1075 models,

but through negotiations, the DOD did reduce the liquidated damages assessment to $1.3 million. Sears did not indemnify Inacom as required under the agency agreement. In November 1993, Sears finally obtained government approval to assign the DOD contract to Inacom. Continuing exposure to liquidated damages due to Sears's discontinuation of the product and Inacom's resulting inability to fulfill the DOD contract caused Inacom to resolve the matter by agreeing to supply a replacement product, thereby suffering actual losses of over $4.1 million to satisfy the contract.

Inacom filed an action against Sears in federal district court in Nebraska. Inacom alleged breach of contract, fraudulent misrepresentation, and fraudulent concealment. Sears filed a counterclaim against Inacom asserting a separate breach of contract by Inacom. The jury found that Sears breached its contract with Inacom and committed the tort of fraudulent concealment but found in favor of Sears on Inacom's fraudulent misrepresentation claim and found in favor of Sears on Sears's counterclaim. The jury awarded Inacom $4,103,341 in damages, and the district court awarded Sears $1,199,862.46 on the counterclaim. The district court then entered judgment in favor of Inacom in the amount of $2,903,478.54. Sears filed a motion for judgment as a matter of law and a motion for a new trial, challenging, among other things, the district court's choice of law, the damages instructions, and the sufficiency of the evidence to support the jury's verdicts. The district court denied the motions, and Sears appeals. Inacom does not cross-appeal the determination of Sears's counterclaim against it.

## II.
### A. Choice of Law

The district court instructed the jury to evaluate Inacom's breach of contract claim in accordance with Illinois law and its fraudulent concealment claim in accordance with Nebraska law. Sears argues that the district court erred when it held that Nebraska law rather than Illinois law governed the fraudulent concealment claim, because the BAA specifies Illinois law as governing the contract. We review a district

4

court's choice of law determinations de novo. See American Home Assur. Co. v. L&L Marine Serv., Inc., 153 F.3d 616, 618 (8th Cir. 1998). We also review de novo a district court's determinations of state law. See Salve Regina College v. Russell, 499 U.S. 225, 231-32 (1991).

A district court sitting in diversity must apply the conflict of law rules for the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In deciding choice of law questions, Nebraska follows the Restatement (Second) of Conflict of Laws. See Harper v. Silva, 399 N.W.2d 826, 828 (Neb. 1987). Sears argues that the most applicable portion of the Restatement is section 187(1), which provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1). Sears contends that the fraudulent concealment claim is intertwined with the contract claim and, therefore, falls within the ambit of the BAA's election of Illinois law to govern all contract claims. We respectfully disagree.

In this case, the BAA provides that the "Agreement shall be governed by and construed in accordance with the law of the State of Illinois, as applied to contracts made and to be performed solely within such state, without regard to conflict or choice of law rules, provisions or principles." (Appellant's App. at 133 (emphasis added).) While this provision adequately covers disputes concerning how to construe the BAA, the language is not broad enough to govern the choice of law for the fraudulent concealment claim, which sounds in tort. Although the claim arose out of the circumstances surrounding the formation of the contract, there is no indication in the BAA that the parties intended to elect Illinois law as the forum for every contract-related claim. The narrow contractual language that the BAA is to be governed and construed by Illinois law simply does not address the entirety of the parties' relationship. "In contrast to broad clauses, which choose a particular state's law to

5

govern, construe and enforce all rights and duties of the parties arising from or relating in any way to the subject matter of [the applicable] contract, the instant clause denotes only that [Illinois] law will be applied to [govern and] construe the contract." Caton v. Leach Corp., 896 F.2d 939, 943 n.3 (5th Cir. 1990) (internal quotations omitted). Because the contract's choice of law provision provides no guidance as to which forum should govern the tort of fraudulent concealment, section 187(1) of the Restatement does not control the issue and we, therefore, shift our focus to other applicable provisions of the Restatement (Second) of Conflict of Laws for guidance.

Section 145 governs choice of law decisions regarding tort issues generally, stating as follows:

> The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . [including] (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145.

Section 148(2) provides guidance for fraud claims, stating that in making choice of law decisions, a district court should consider the following:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render

6

performance under a contract which he has been induced to enter by the false representations of the defendant.

Id. § 148(2).

Applying these provisions, we conclude that Nebraska law has the most significant relationship to the fraud tort at issue. Sears maintains its business headquarters in Chicago, Illinois, but most of the conduct comprising and resulting from the fraudulent concealment tort occurred in Omaha, Nebraska. Inacom received Sears's representations concerning the contract at its headquarters in Omaha, Nebraska. Inacom relied upon Sears's representations in Omaha, Nebraska. Inacom attempted to comply with the deficient DOD contract from its headquarters in Omaha, Nebraska. Inacom suffered its injuries in Omaha, Nebraska. In essence, the balance of the factors listed in the Restatement (Second) of Conflict of Laws overwhelmingly favor applying Nebraska law. Hence, we hold that the district court did not err by opting to evaluate the fraudulent concealment claim in accordance with Nebraska law.

## B. Sufficiency of the Evidence

Sears contends that the district court erred by denying its motion for judgment as a matter of law and for a new trial asserting insufficient evidence to sustain the verdicts. We conduct de novo review of a district court's decision to deny a motion for judgment as a matter of law based upon the sufficiency of the evidence. See Henderson v. Simmons Foods, Inc., 217 F.3d 612, 615 (8th Cir. 2000). We review the denial of a motion for a new trial under an abuse of discretion standard. See Pulla v. Amoco Oil Co., 72 F.3d 648, 656-57 (8th Cir. 1995). We note that a "party seeking to obtain a new trial based upon the weight of the evidence or a posttrial judgment as a matter of law based on the sufficiency of the evidence faces an onerous burden." United States v. Big D Enters., Inc., 184 F.3d 924, 929 (8th Cir. 1999), cert. denied, 529 U.S. 1018 (2000). The strictures of the review process dictate that we view the

7

evidence in a light most favorable to the jury's verdict. See id. Reversible error occurs "[o]nly when there is a complete absence of probative facts to support the conclusion reached." Lavender v. Kurn, 327 U.S. 645, 653 (1946); Henderson, 217 F.3d at 615.

Sears directs its sufficiency of the evidence challenge to the jury's conclusions regarding breach of contract and fraudulent concealment. We conclude that more than sufficient evidence exists to support the jury's verdict for both breach of contract under Illinois law and fraudulent concealment under Nebraska law.

Pursuant to Illinois law, a plaintiff seeking to recover damages for breach of contract must prove that it performed in accordance with the terms of a valid and enforceable contract, that the defendant failed to fulfill its contractual obligations, and that the defendant's breach caused injury to the plaintiff. See Gallagher Corp. v. Russ, 721 N.E.2d 605, 611 (Ill. App. Ct. 1999). "A defendant's failure to comply with a duty imposed by the contract gives rise to the breach." Id.

There is sufficient evidence to support the jury's finding of breach of contract. Sears and Inacom entered into a valid and enforceable contract when they executed the BAA and subsequently the agency agreement. The BAA contained certain warranties by Sears that it was not in default or material breach of its contract with the DOD and that Sears enjoyed a satisfactory relationship with the government. In the agency agreement, Sears pledged to indemnify Inacom for all losses related to the DOD contract that were not attributable to Inacom's failure to perform. Inacom was unable to perform on the DOD contract only because, unbeknownst to Inacom (but well known to Sears), Sears's supplier had opted to discontinue production of the D1075 computers which Sears was obligated to ship to the DOD. This action on the part of Sears effectively prevented Inacom from fulfilling Sears's obligations under the government contract as required by the agency agreement. Further, Inacom's inability to ship the contractually designated product directly resulted in the DOD's assessment

8

of liquidated damages against Inacom and caused Inacom to incur further damages in administering the contract. No evidence suggests that Inacom did not perform faithfully or proficiently under the contract. Inacom's losses were directly attributable to Sears's actions, and Sears failed to indemnify Inacom as specified in the agency contract. This failure and Sears's written representations in the BAA support a finding that Sears breached its contractual obligations, and Inacom sustained economic harm as a direct consequence of Sears's breach. Accordingly, the district court correctly rejected Sears's request for a new trial and its challenge to the sufficiency of the evidence regarding the breach of contract claim.

Success on a fraudulent concealment action under Nebraska law requires a plaintiff to show that the defendant knew of and had a duty to disclose a material fact, that the defendant concealed the material fact and it was not within the plaintiff's reasonably diligent attention, that the defendant concealed the fact intending the plaintiff to act in response to the concealment, that the plaintiff reasonably relied on the fact and sustained damage as a result of that reliance. See Streeks, Inc. v. Diamond Hill Farms, Inc., 605 N.W.2d 110, 118 (Neb. 2000). A defendant's deliberate silence in the face of a duty to disclose material information also constitutes an element of fraudulent concealment. See id.

The evidence is sufficient to support the jury's finding that Sears engaged in fraudulent concealment as defined by Nebraska law. During Sears's discussions with Inacom regarding Inacom's purchase of SBC, Sears vigorously and aggressively prompted Inacom to accept Sears's contract with the DOD as part of Inacom's overall SBC acquisition. Inacom's president and chief executive officer, Bill L. Fairfield, initially expressed reluctance to accept the DOD contract. Fairfield's reluctance ostensibly stemmed from the fact that Inacom's business did not include defense contracting or supplying computers to the federal government. Inacom's opportunities to investigate the DOD contract, however, were hampered by Sears. Sears insisted that Inacom sign a confidentiality agreement during the negotiation process which largely

9

prevented Inacom from conducting the type of meaningful due diligence that would have uncovered questions concerning the relationship between Sears and the DOD, and between Sears and its supplier of the computers. In view of the restrictiveness of the confidentiality agreement and Inacom's lack of experience with government contracts, Inacom importuned Sears for assurances as to the overall profitability and condition of the contract with the DOD. SBC's chief executive officer, Gary Ramsey, told Inacom that the contract with the government was a profitable agreement. Sears also provided written assurances in the BAA that it was not in material breach or default with regard to the contract, and that it enjoyed a satisfactory relationship with the DOD. Finally, Sears pledged in the agency agreement to indemnify Inacom for all losses incurred while administering the DOD contract that were not attributable to the conduct of Inacom.

Contrary to Sears's representations, numerous problems plagued the DOD contract. Unlike the picture of profitability portrayed by Ramsey, Sears actually suffered losses when performing under the contract. The government contract required Sears to ship a specified number of D1075 model computers to the DOD within a delineated time frame. Upon discontinuation of the D1075, Sears materially breached its contract with the DOD. Moreover, Sears's unilateral decision to discontinue furnishing the D1075 model computers drew a response from the government. The government informed Sears that the company's unilateral decision to discontinue the D1075 computers was unacceptable, and the DOD threatened to assess Sears with liquidated damages if Sears failed to perform in accordance with the terms of the contract. Sears's internal correspondence indicates that on the eve of its closing with Inacom, Sears contemplated filing suit against the government over the DOD's expressed dissatisfaction with Sears's decision to discontinue the D1075 model and the government's threat to enforce the procurement contract's liquidated damages clause.

Fraudulent concealment is demonstrated by Sears's silence in the face of its duty to disclose information vital to the DOD contract. Sears induced a reluctant Inacom to accept the contract through illusions of profitability and allusions to a satisfactory relationship with the government Sears was planning to sue. Sears never told Inacom about the losses it incurred in administering the contract. Sears never informed Inacom about its decision to discontinue furnishing the D1075 computers even though such discontinuation ensured that Inacom would not be able to perform in accordance with the terms of the agency agreement. In addition, Sears never notified Inacom about the government's threat of liquidated damages and or Sears's contemplation of legal action against the government. Sears had a duty to disclose such material information to Inacom, and the restrictions on a meaningful due diligence process prevented Inacom from readily uncovering the concealed information. Inacom unquestionably relied upon Sears's less than candid conduct, and Inacom directly suffered damages as a result of Sears's conduct. This evidence supports the jury's verdict on the fraudulent concealment claim, and the district court correctly denied Sears's request for a new trial and judgment as a matter of law.

### C. The Classification of Damages

Sears asks this court to remit the damage award from $4.1 million to the amount of liquidated damages assessed by the government--$1,349,100. Sears contends that the amounts exceeding the liquidated damages assessment constitute consequential damages, which Sears maintains are not permitted under the BAA. Sears argues that the district court erred when it submitted an instruction to the jury permitting the jury to award damages for "unusual" loss if the jury found that "special circumstances existed which caused unusual loss to the plaintiff." (Appellant's App. at 2002.) Sears contends that this instruction amounts to a submission of consequential damages directly contravening the terms of its contract with Inacom.

11

We first note that Sears failed to raise the precise consequential damages issue before the district court that it now argues on appeal to this court. Sears did object to the inclusion of the unusual loss instruction, but it did not state this particular ground in its objection. When questioned by the district court as to the basis for its objection, Sears's counsel stated that he did not believe that any evidence of an unusual loss existed. Sears's counsel did not apprise the district court of the contract's prohibition against consequential damages or any Illinois law on the issue. It is axiomatic that a litigant must articulate the specific bases for its objection in order to allow the district court an opportunity to fully assess the merits of the objection. See Dupre v. Fru-Con Eng'g Inc., 112 F.3d 329, 333-34 (8th Cir. 1997). Sears's failure to articulate in district court the precise objection that it now relies upon compels us to evaluate the argument under a plain error standard of review. See id. at 333.

Illinois courts define consequential damages as loss or injury that does not flow directly and immediately from a defendant's wrongful action but still occur as a result or consequence of that action. See Hartford Acc. & Indem. Co. v. Case Found. Co., 294 N.E.2d 7, 14 (Ill. App. Ct. 1973). Sears argues that only the liquidated damage assessment flowed directly from its breach of contract. Sears contends that Inacom's remaining damages are collateral consequences that do not directly ensue from Sears's wrongful actions. We disagree.

Sears materially breached its contract with the DOD by unilaterally discontinuing the D1075 model computers and directly caused Inacom's inability to supply the government with the contractually agreed upon computers. Unable to fulfill the DOD contract as written, Inacom still remained obligated to fulfill Sears's obligations under the DOD contract as best it could, requiring added costs in mitigation. Inacom incurred the remaining financial losses (those exceeding the liquidated damages assessment) during the process of attempting to satisfy its newly acquired contractual obligations under the agency agreement. The fact that Inacom suffered losses as a result of its inability to ship the contractually designated computers was a direct outcome of Sears's

12

breach, not a consequential loss. Hence, we conclude that the jury's entire $4.1 million award represents direct rather than consequential damages as defined by Illinois law. Our conclusion renders null Sears's challenge to the propriety of the district court's jury instruction (which we note is an approved Illinois pattern instruction), and we find no plain error.

## D. Economic Loss Rule

Sears argues that the economic loss rule as defined by Illinois and Nebraska law prevents Inacom from asserting a fraudulent concealment claim in this case. We do not address Illinois law on this issue because the district court correctly concluded that Nebraska law governed the fraudulent concealment claim. Sears contends that pursuant to the economic loss rule, "Nebraska law bar[s] recovery in tort for economic loss resulting from conduct amounting to a breach of contract." (Appellant's Reply Br. at 12.) We note that far from adopting the economic loss rule, Nebraska law appears to allow recovery for fraudulent concealment even if the tort is indistinguishable from the breach of contract. See Streeks, 605 N.W.2d at 122-23. We need not decide the issue, however. Our conclusion that the breach of contract claim alone is able to sustain the entire damage award in this case renders Sears's economic loss rule claim superfluous.

## III.

For the reasons stated herein, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

13