276 Neb. 781
ORD, INC., et al., APPELLEES,
v.
AMFIRST BANK and VAN KORELL, APPELLANTS.
No. S-06-1363.
Supreme Court of Nebraska.
Filed December 5, 2008.
Andre R. Barry, James M. Bausch, and Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellants.
Mark J. Appleton, of Robinson, Waters & O'Dorisio, P.C., and Ronald D. Mousel, of Mousel & Garner, for appellees.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF THE CASE
Appellees Ord, Inc., with Kevin Ord as owner, and D&J Trust, with Dan Liebig as trustee, purchased notes issued by DFS Credit Corporation (DFS) from Aragon Financial Services (Aragon) through its registered representative Kent Carter. Carter's company was called AmFirst Investment Services. Carter was associated with appellants, AmFirst Bank and its president, Van Korell. DFS defaulted on those notes, and appellees filed suit in the district court for Red Willow County.
This case was previously appealed to the Nebraska Court of Appeals, which in part reversed, and remanded for trial. Ord v. AmFirst Invest. Servs., 14 Neb. App. 97, 704 N.W.2d 796 (2005) (Ord I). Upon remand, a jury found in favor of appellees and against appellants. The district court subsequently ruled that certain assignment and hold harmless agreements signed by appellees were null and void and, therefore, did not serve as an impediment to the entry of a monetary judgment in favor of appellees. Appellants appealed to the Court of Appeals. In a memorandum opinion, the Court of Appeals affirmed the district court's judgment. Ord, Inc. v. AmFirst Bank, No. A-06-1363, 2008 WL 1746999 (Neb. App. Apr. 8, 2008) (selected for posting to court Web site). We granted appellants' petition for further review. We affirm.

STATEMENT OF FACTS
In 1992, Korell, as president of AmFirst Bank, met with a registered representative of Aragon to discuss entering into an arrangement in which an Aragon representative would sell securities to AmFirst Bank's retail customers. Korell brought Carter to the meeting. After the meeting, Carter took and passed his "Series 7" securities examination and became a registered representative of Aragon. AmFirst Bank, Carter, and Aragon entered into an arrangement whereby Carter would lease space at AmFirst Bank and sell securities from Carter's company, AmFirst Investment Services.
In 1997, Ord was the president and owner of Ord, Inc. At that time, Ord, Inc., had $160,000 from the sale of a restaurant. At trial, Ord testified that he had a discussion with Korell about investing these proceeds and that Korell advised him to go to AmFirst Bank and talk with Carter. Ord testified that when he met with Carter, Carter told Ord about DFS notes and described them as a sound investment. DFS notes appeared on Aragon's approved products list. Ord ultimately purchased $160,000 in DFS notes.
Liebig was an AmFirst Bank customer who was referred to Carter for the purpose of purchasing investments. Liebig purchased DFS notes from Carter. Prior to the purchase of DFS notes, Liebig and Carter had two conversations discussing potential investments. Liebig informed Carter that he was hoping for a safe investment for his retirement, and Carter told Liebig that he believed DFS notes would be such an investment. Acting on this information, Liebig purchased $62,000 worth of DFS notes on June 9, 1997. Liebig subsequently invested more of his retirement funds in DFS notes, ultimately totaling $250,000.
Carter filled out documents for both appellees indicating that the clients' investment objectives were "[conservation of capital with stable income." However, without the knowledge of either Ord or Liebig, Carter also completed portions of the documents as to the income and net worth of Ord, Inc., and D&J Trust in which Carter inflated the economic profile of appellees, making them appear eligible to invest in the unregistered DFS securities.
In July 2000, investors in the DFS notes received notice that the DFS trusts that issued the notes were in default on their obligations to pay interest. On November 15, appellees met separately with representatives of Aragon, including Carter and John Connealy, in the AmFirst Bank boardroom. During the meetings, Carter and Connealy asked appellees to each sign a document entitled "Assignment and Hold Harmless Agreement." The agreements assigned all of appellees' claims associated with the DFS notes to Aragon and in separate provisions released and held harmless several individuals and entities including Aragon, AmFirst Bank, and Korell from liability related to the sale of the DFS notes. Appellees testified that representations were made to them that the best chance for success in recovering their money was to sign the assignment and hold harmless agreements. Appellees testified that they were not informed at these meetings that DFS had been a high-risk investment and that Carter had completed documents to make appellees appear eligible to make these investments, which could only be sold to "accredited investors," including individuals or entities with high income and high net worth. Appellees each signed the agreements.
On June 8, 2001, appellees filed their lawsuit in the district court for Red Willow County against AmFirst Investment Services; AmFirst Bank; Korell; Carter; Aragon; DynaCorp Financial Strategies; DFS Credit Corporation; DFS Secured Healthcare Receivables Trusts II and IV; Robert Vener; Bank of New York Western Trust Company; Chiao, Smith & Associates; and Buchanan, Anderson and Pratt. In their complaint, appellees asserted several claims for relief against AmFirst Bank, Carter, and Aragon, including the following: violation of the Securities Act of Nebraska, Neb. Rev. Stat. § 8-1101 et seq. (Reissue 1997 & Cum Supp. 2000); common-law negligence, by misrepresentation; common-law fraud, by omission; breach of contract; violation of broker-dealer registration provisions under § 8-1103 and 15 U.S.C. § 78o (2000); violation of investment adviser registration provisions under § 8-1103 and 15 U.S.C. § 80b-3 (2000); violation of securities registration provisions under § 8-1104 and 15 U.S.C. § 77e (2000); violation of the Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq. (Reissue 1999); common-law agency; and controlling person liability provisions under §§ 8-1102 and 8-1118(3) and 15 U.S.C. §§ 77o and 78t(a) (2000). On October 9, 2001, appellees filed an amended complaint, which contained essentially the same allegations. The amended complaint was served upon the same defendants, including Aragon.
On October 26, 2001, Aragon filed an answer to appellees' amended complaint. In its answer, Aragon alleged, inter alia, that appellees were prohibited from bringing the lawsuit by virtue of the assignment and hold harmless agreements that appellees had entered into with Aragon. The assignment and hold harmless agreements were attached to Aragon's answer. The lawsuit proceeded for some time with Aragon's active participation, in which Aragon, inter alia, continued to allege that appellees had assigned away their rights to file suit on claims associated with their DFS investments and that appellees had agreed to hold harmless various parties now being sued.
On February 7, 2003, Aragon's attorney of record filed a motion to withdraw from representing Aragon. The motion was granted. The parties agree that Aragon stopped actively engaging in the litigation some time in 2003. On July 24, 2003, AmFirst Bank, Korell, and Carter filed a motion for summary judgment. On January 5, 2004, the district court granted the motion, stating that the assignment and hold harmless agreements were valid contracts and that such agreements showed that appellees were no longer the real parties in interest, having assigned their interests to Aragon. The district court further found that by signing the agreements, appellees released AmFirst Bank and Korell from any liability.
Subsequently, the district court dismissed Carter from the action because the U.S. Bankruptcy Court for the District of Nebraska had entered a discharge against Carter. Furthermore, on March 5, 2004, the district court entered default judgment against Aragon and in favor of Ord for $160,413.86 plus interest at 3.016 percent per annum, and in favor of Liebig for $280,213.04 plus interest at the same rate, based on Aragon's failure to respond to discovery requests. A separate judgment was entered against Aragon on March 10, stating that "ON March 5, 2004, JUDGMENT WAS RENDERED FOR PLAINTIFFS [appellees] AGAINST ARAGON FINANCIAL SERVICES."
In Ord I, Ord and Liebig appealed, inter alia, the district court's grant of summary judgment in favor of AmFirst Bank, Korell, and Carter. On October 11, 2005, the Nebraska Court of Appeals concluded that genuine issues of material fact existed as to whether Ord and Liebig were fraudulently induced to enter into the assignment and hold harmless agreements and in part reversed the judgment and remanded the cause for trial. Ord v. AmFirst Invest. Servs., 14 Neb. App. 97, 704 N.W.2d 796 (2005).
After the remand, on June 1, 2006, the district court granted appellees' motion to file a third amended complaint to add a separate cause of action for rescission of the assignment and hold harmless agreements. The third amended complaint did not name Aragon, nor was Aragon served. At the trial of this case, the district court declined to rule on the cause of action for rescission until after the jury had rendered its verdict on the claims in the earlier complaints seeking damages for investment-related causes of action. The outcome of this jury trial and subsequent bench trial on the rescission cause of action gives rise to this appeal.
A jury trial on appellees' third amended complaint began on August 15, 2006. At the conclusion of the trial, the jury returned a verdict finding that Carter was an agent of both AmFirst Bank and Aragon and that Carter acted within the scope of his authority as AmFirst Bank's agent when he sold DFS notes to appellees. The jury found against appellants and for appellees on their claims of negligent misrepresentation, fraudulent misrepresentation, and breach of fiduciary duty and found that appellants knew, or in the exercise of reasonable care should have known, of Carter's claimed misconduct. The jury returned a verdict of $110,768.78 in favor of Ord and $204,124.25 in favor of Liebig.
After the jury returned its verdict, the district court considered the rescission cause of action. The court concluded that appellees had clearly and convincingly established that Carter was guilty of both fraudulent concealment and fraudulent misrepresentation when he sold the notes to appellees and that before signing the assignment and hold harmless agreements, appellees justifiably relied on Carter, who did not tell them that the notes were high-risk investments. On October 30, 2006, the court entered an order rescinding the assignment and hold harmless agreements signed by appellees. In this same order, the district court denied appellants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The district court reduced appellees' judgment against appellants in response to a remittitur filed by appellants and entered monetary judgment in favor of appellees and against appellants.
In this current appeal, AmFirst Bank and Korell appealed to the Nebraska Court of Appeals, asserting that the district court erred (1) by submitting appellees' claims to the jury, because they had assigned those claims to Aragon; (2) by entering an order rescinding the assignment and hold harmless agreements signed by appellees; (3) by denying appellants' motions for directed verdict and judgment notwithstanding the verdict, because there was no evidence that Carter acted as the agent of AmFirst Bank; and (4) by failing to give appellants' requested jury instructions on agency. In a memorandum opinion filed April 8, 2008, the Court of Appeals affirmed the judgment of the district court. Ord, Inc. v. AmFirst Bank, No. A-06-1363, 2008 WL 1746999 (Neb. App. Apr. 8, 2008) (selected for posting to court Web site). Appellants petitioned this court for further review, which we granted.

ASSIGNMENTS OF ERROR
In their petition for further review, appellants, AmFirst Bank and Korell, assert that the Nebraska Court of Appeals erred (1) by applying the doctrine of collateral estoppel based on the prior appeal; (2) by disregarding the requirement that all parties to an instrument sought to be canceled be named and served as necessary parties to the suit for rescission; (3) by failing to give appropriate weight to the written agreement between AmFirst Bank and its lessee, Carter, and concluding that there was substantial evidence to support the jury's verdict that Carter was an agent of AmFirst Bank; and (4) by concluding that their proposed jury instructions on the subject of agency "'would only serve to mislead and confuse the jury on the law of agency,'" because they used the term "`employee'" rather than "`agent.'"
We granted the petition for further review because we deemed appellants' assignment of error claiming that the Court of Appeals erred by disregarding the requirement that all parties to an instrument sought to be canceled are necessary parties to the suit for cancellation merited discussion. Because we conclude that the Court of Appeals properly resolved the remainder of appellants' assigned errors, we decline to address those claims.

STANDARD OF REVIEW
An action for rescission sounds in equity, and it is subject to de novo review upon appeal. Schuelke v. Wilson, 255 Neb. 726, 587 N.W.2d 369 (1998).

ANALYSIS
In their petition for further review, appellants, AmFirst Bank and Korell, assert that although the Court of Appeals correctly quoted Nebraska law to the effect that "[a]ll parties to an instrument to be canceled are necessary parties to the suit for cancellation," see Ord, Inc. v. AmFirst Bank, No. A-06-1363, 2008 WL 1746999 at *5, the Court of Appeals ignored this rule when it affirmed the district court's decision to rescind the assignment and hold harmless agreements at a point in the litigation at which judgment against Aragon had already been entered. Appellees, Ord and Liebig, argue that Aragon was not required to be in the action at the time the district court ordered the contract rescinded, because Aragon had gone out of business and was insolvent. We do not adopt the reasoning of the parties, but, nevertheless, for the reasons stated below, affirm.
An action for rescission sounds in equity, and it is subject to de novo review upon appeal. Schuelke v. Wilson, supra. As appellants correctly note, Nebraska law provides that all parties to an instrument sought to be canceled are necessary parties to the suit for cancellation, either as plaintiffs or as defendants. See, Rumbel v. Ress, 166 Neb. 839, 91 N.W.2d 36 (1958); Shaul v. Brenner, 10 Neb. App. 732, 637 N.W.2d 362 (2001). In applying this principle in Rumbel, we cited a supplemental opinion in Cunningham v. Brewer, 144 Neb. 211, 219, 16 N.W.2d 533, 534-35 (1944), which explained that "all persons whose rights, interests or relations with or through the subject matter of the suit would be affected by the cancellation or rescission should be brought before the court so that they can be heard in their own behalf." It has been observed that where the rights derived from a contract are at issue, "a contracting party is the paradigm of an indispensable party." Travelers Indem. Co. v. Household Intern., Inc., 775 F. Supp. 518, 527 (D. Conn. 1991). Although the Court of Appeals did not directly rule that the rescission claim could go forward without Aragon, its opinion implies that Aragon's absence was not an impediment to the rescission case, thus implicitly rejecting appellants' claim of necessary party. See, e.g., Dawes v. Wittrock Sandblasting & Painting, 266 Neb. 526, 667 N.W.2d 167 (2003), disapproved on other grounds, Kimminau v. Uribe Refuse Serv., 270 Neb. 682, 707 N.W.2d 229 (2005); Olson v. Palagi, 266 Neb. 377, 665 N.W.2d 582 (2003).
As noted, appellees filed their third amended complaint containing the cause of action for rescission after judgment had been entered against Aragon, and Aragon was not named in or served with a copy of the third amended complaint. In this appeal, we are asked to determine whether the district court's order of rescission of the assignment and hold harmless agreements to which Aragon was a party was proper where Aragon was not named or served with the rescission cause of action but had previously participated in the case. Under the unique facts and unusual procedural history of this case, including Aragon's initial participation in the litigation during which it attempted to assert the protections of the hold harmless provisions of the agreements, we conclude that the district court did not err in granting rescission, and the Court of Appeals did not err in affirming the district court's order.
In considering appellants' rescission-related argument, it is first necessary for us to examine what rights were in fact transferred to Aragon upon entering into the assignment and hold harmless agreements, and whether Aragon had an opportunity to be heard on its own behalf with respect to the rescission of those rights. See Cunningham v. Brewer, supra.
The agreement states in relevant part:
1. Assignment. Investor hereby assigns and conveys to Aragon all of its rights and interests in and to any and all claims or causes of action or other rights of recovery associated with its investment in the Securities ("Claims"). . . .
. . . .
3. Release and Hold Harmless. Investor hereby agrees, on behalf of itself and all who may claim through it, to release and hold the Released Parties (as hereinafter defined) harmless from and against all claims, causes of action, debts, liabilities, obligations or expenses, of any nature, that arise out of or in any way relate to the offer and/or sale of the Securities . . . . For purposes of this Agreement, "Released Parties" means and includes Aragon . . . and every bank or other financial institution with which Aragon contracted, or which participated or acted together with Aragon, in any capacity, in connection with the offer and/or sale of the Securities.
This contract has two elements: first, it assigns all of appellees' rights and interests in claims associated with the DFS notes to Aragon, and second, it holds harmless, among others, Aragon and appellants in relation to the sale of the DFS securities. An examination of these agreements shows that with respect to the assignment portion, appellees in effect assigned to Aragon their rights to sue numerous entities, including Aragon itself. In its initial participation in this litigation, Aragon could havebut did nottake steps to sue the various entities involved in this dispute. Aragon had an opportunity to exercise its right to assert claims against others and chose to forgo this right. As to Aragon's right to sue itself, we believe that this portion of the assignment was essentially meaningless. Thus, the failure, if any, of appellees to notify Aragon of their attempt to rescind the assignment portion of the agreements is of no consequence.
With respect to the hold harmless portion of the agreements, appellees agreed to hold Aragon and others harmless. In order for the court to properly rescind this portion of the agreements, it was necessary that Aragon be made aware of appellees' effort to ignore the hold harmless provisions by seeking judgment against Aragon for its alleged wrongdoing and that Aragon have an opportunity at some point in the lawsuit to enforce the agreements and to assert its claimed right to be held harmless. Therefore, the issue before us is whether Aragon had an opportunity in this lawsuit to be heard on its own behalf with respect to appellees' effort to rescind the hold harmless portion of the agreements and seek judgment against it and the other various people and entities encompassed by the agreements.
A review of the record shows that in 2001, Aragon had the requisite opportunity and placed its claim to be held harmless and its objection to rescission squarely at issue in this lawsuit. It is clear that appellees' effort to avoid the hold harmless provisions as to Aragon by filing suit against Aragon and others was apparent to Aragon, and the record shows that as early as 2001, Aragon had an opportunity to and in fact did challenge what was effectively appellees' effort to rescind the hold harmless provisions. Specifically, on October 26, 2001, Aragon answered appellees' amended complaint and alleged an affirmative defense based on the assignment and hold harmless agreements. In its answer, Aragon objected to appellees' suit and alleged that it should be held harmless under the agreements at issue. The agreements were attached to Aragon's answer. Although Aragon was served with numerous pleadings in this case, Aragon stopped actively participating in the litigation in 2003. A judgment was entered against Aragon on March 10, 2004, and Aragon did not seek to have this judgment set aside.
Based on this record, Aragon was fully on notice that appellees did not deem the agreements to be valid, was afforded an opportunity to be heard, and did in fact invoke the hold harmless protections of the agreements in this lawsuit. Instead of pursuing its right to be held harmless as set forth in the agreements, Aragon abandoned the issue by failing to participate in the litigation, which ultimately resulted in a judgment against it. In sum, although not named and served with the third amended complaint, Aragon was in fact on notice as a party in this lawsuit that appellees believed the agreements to be invalid. Under the unique facts of this case, Aragon had an opportunity to, and did in fact, oppose appellees' efforts at rescission and we, therefore, find no fault in the Court of Appeals' claimed failure to discuss the issue of whether Aragon was a necessary party to the district court's consideration of appellees' rescission claim.

CONCLUSION
Because we conclude that Aragon had an opportunity to be heard on its own behalf with respect to its rights under the assignment and hold harmless agreements in this lawsuit, we conclude that the Court of Appeals did not err in upholding the district court's decision rescinding the agreements. We conclude that the Court of Appeals did not err in any respect challenged on further review and, therefore, affirm.
Affirmed.
WRIGHT, J., not participating.