IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

WIDICK V. PRICE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MILTON D. WIDICK, APPELLANT,

V.

DOROTHY L. PRICE, APPELLEE.

Filed April 23, 2019.    No. A-18-467.

Appeal from the District Court for Butler County: MARY C. GILBRIDE, Judge. Affirmed in part, and in part reversed and remanded with directions.

Richard Register for appellant.

Jovan W. Lausterer, of Bromm, Lindahl, Freeman-Caddy & Lausterer, for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Milton D. Widick appeals from orders of the district court for Butler County that found he had entered into an agreement to lease real property owned by Dorothy L. Price and that awarded Price damages in the amount of past-due rent owed by Widick. On appeal, Widick argues that he had entered into an agreement to purchase, not lease, the property and that Price was unjustly enriched as the result of improvements he made to the residence and an outbuilding located thereon. Widick also argues on appeal that the initial $15,000 payment he made was a damage deposit and that he is entitled to its return. We affirm the district court's decision with respect to the issues of past-due rent and unjust enrichment but reverse the district court's dismissal of Widick's claim for return of the damage deposit and remand this matter with directions.

- 1 -

BACKGROUND

At the outset, we note that this case previously appeared before us. On October 13, 2017, in a memorandum opinion in case No. A-16-840, we remanded the matter with directions for the district court to consider the effect of the parties' written agreement and issue a new order addressing their rights and liabilities under that agreement. We begin by briefly recounting the events leading up to our decision.

On January 3, 2010, Widick and Price signed a written agreement concerning an acreage located at 2091 Road 45 in Linwood. The agreement was titled "Nebraska Residential Lease Agreement" and designated Price as "Landlord" and Widick as "Tenant." The agreement provided that the lease term was 2 years, beginning in January 2010 and ending in January 2012. The monthly rent was $1,300, and the damage deposit was $15,000. The agreement contained a section that discussed alterations and improvements: "Tenant shall make no alterations to the buildings or improvements on the Premises . . . without the prior written consent of Landlord." The agreement also contained a section for additional provisions, wherein someone wrote "purchase option with sales price TBD by mortgage payoff." Widick and Price both signed this document and did not sign any other written agreements concerning the property. We note that in addition to the financial commitments made by Widick in the agreement, he also paid 2 months of mortgage payments, which were due and owing at the time the agreement was entered. Those payments, totaling almost $3,000, were made directly to the holders of the first and second mortgages on the acreage.

During Widick's tenancy, he made a number of alterations to the residence and a quonset hut on the acreage. Widick stated that he believed certain improvements needed to be made before a lender would approve financing for him to purchase the property. Pursuant to this belief, he replaced a number of the windows, removed and partially replaced worn and outdated floor coverings, retiled a bathroom, upgraded some aspects of the electrical components in the basement, and repainted the quonset hut. He also noted that the roof of the house was in need of replacement but did not replace it while living there. While Widick stated that he did not recall discussing the improvements he made prior to making them, he said that Price was aware of his work. He said Price complimented the improvements on numerous occasions, relaying compliments from neighbors as well. In all, Widick claimed that the improvements he made totaled $16,164.03.

Widick remained living at the property beyond January 2012, which was when the stated term of the agreement ended. At some point after January 2012, Price increased the monthly rent to $1,500. Around April 2014, Price notified Widick that she was terminating his tenancy. Widick eventually moved out of the property in October 2014.

On May 28, 2014, after Price notified Widick of the termination, Widick filed a complaint in the district court, which alleged that Price had breached their agreement. Widick also alleged that Price had been unjustly enriched by the improvements he made to the property. He asked the court for:

(a) An immediate injunction against removal from the property;

(b) A determination that the future payments be made to the Clerk of this Court until the rights of those funds can be determined;

(c) The rescission of [the agreements between Widick and Price] and for the return of the $18,000 [sic] paid in January 2010;

(d) The judgment for unjust enrichment for the repairs in the amount of $16,164.03;

(e) Attorney's Fees, and costs; and

(f) Any other just and equitable relief that the Court determines appropriate.

Price filed an answer to Widick's complaint on June 23, 2014. She generally denied Widick's assertions that she had breached their January 2010 agreement and that she was unjustly enriched by any improvements that Widick made to the property. She specifically asserted that Widick breached the terms of their agreement and that he did not have permission to make any improvements to the property. In a counterclaim, Price alleged that Widick failed to pay rent for all of September and a portion of October 2014 prior to vacating the property. She asked that the court award her $2,170.96 in past-due rent and requested additional funds for damage done and items removed from the property.

On July 24, 2014, Price filed a motion for summary judgment as to all of Widick's causes of action. A hearing on the motion for summary judgment was held on August 26. Although both parties presented evidence at the hearing, neither Widick nor Price introduced a copy of the agreement that they signed in January 2010. However, as Widick noted in his brief on appeal, both parties argued the motion for summary judgment assuming that the court had a copy of the agreement. On November 4, 2014, the district court granted summary judgment on all of Widick's claims founded upon the existence of a written contract. The court specifically found:

> [Widick] has failed to demonstrate that there exists a valid contract under which he is entitled to purchase the property at issue. A contract for the sale of land is required to be in writing and signed by the seller. No such writing was pled or demonstrated at the summary judgment hearing.

The court also denied Price's motion for summary judgment as to Widick's claim of unjust enrichment. On November 5, 2014, the day after the court entered its summary judgment order, a fire completely destroyed the residence located on the acreage.

Thereafter, Widick twice attempted to amend his complaint, failing each time to file a proper amended complaint. The court specifically noted that the original complaint filed by Widick remained the operative complaint and that the only issue remaining was his unjust enrichment claim.

Trial on Widick's unjust enrichment claim was held on January 12 and March 2, 2016. As part of his case-in-chief, Widick presented evidence asserting his belief that the parties' written agreement constituted a purchase agreement, not a lease agreement. For the first time, Widick introduced a copy of the parties' agreement that was signed in January 2010. It was received into evidence and marked as exhibit 10. Widick also presented evidence concerning the improvements he made to the property and testified to the value of those improvements.

Price, meanwhile, presented evidence concerning her belief that the written agreement constituted a lease with an option to purchase. She testified that the purchase option expired at the lease's conclusion in January 2012. Price further testified that she did not give Widick permission

to make improvements to the property and that Widick had failed to pay rent for September and a portion of October 2014 before he vacated the property. Finally, she presented evidence regarding the removal of what she claimed to be her personal property from the acreage.

At the close of evidence, the court informed the parties that it had concerns about its earlier decision granting Price's motion for summary judgment on the breach of contract claims. The court informed the parties that it had based its decision to grant the motion for summary judgment on its belief that there was no written agreement between the parties. The court noted that it based its prior decision on the parties' failure to offer the agreement into evidence at the summary judgment hearing. However, at trial, the agreement was actually produced and put into evidence. The court stated:

> I guess I'm saying: Now that I have it in evidence, I feel duty bound to take a look at the agreement, even though there was a failure of proof at the time of summary judgment hearing. So if you want to brief that issue to see if it changes anything, you know, fine. . . . So let's go back and take a look at the agreement.

The court then asked Price's counsel if he wished to reopen the evidence and call witnesses regarding the breach of contract claims. Price's counsel declined the invitation. Similarly, Widick's counsel told the court that he did not see any need to present further evidence. The court concluded the trial by requesting briefing on all of the issues, including the effect of the written agreement.

On August 8, 2016, the district court entered its order, finding in favor of Price on Widick's claim of unjust enrichment. The court found in favor of Price on her counterclaim for unpaid rent in the amount of $2,170.96 and found in favor of Widick on Price's counterclaim for damages and/or removal of items from the property. However, the court did not discuss the parties' written agreement, its decision to reconsider its previous summary judgment order, or the effect of the written agreement on any of the parties' other claims.

Widick then appealed from the district court's decision. He argued that the court erred in granting Price's motion for summary judgment, failing to reconsider the summary judgment order in light of the written agreement's introduction--thus, failing to rule in his favor on his breach of contract claims, and finding in favor of Price on his claim of unjust enrichment.

Upon our review, we noted that Widick also argued, but did not properly assign, that the court erred in failing to order that the unpaid rent he owed to Price should be offset from the $15,000 security deposit he paid Price when the agreement was entered. Thus, we did not consider that specific claim. We found that the court had not addressed the effects of the parties' written agreement and did not issue a ruling related thereto, despite stating its intent to do so at the end of trial. Accordingly, we remanded the matter to the district court with directions to consider the written agreement's effects and issue a new order addressing the parties' rights and liabilities under the written agreement. We also directed the district court to address the effect of those rights and liabilities on Widick's claims and Price's counterclaims.

Following our remand, the district court held a short hearing on February 6, 2018, and issued a written order on April 12. In that order, the court found that the parties' written agreement, which was admitted as exhibit 10, constituted a lease agreement. The court noted that the lease

agreement was clearly titled "Nebraska Residential Lease Agreement." The court found that the lease agreement contained some sort of a purchase option by virtue of the handwritten language "purchase option with sales price TBD by mortgage payoff," but it further found that Widick had not exercised that option in any way prior to the agreement's expiration. The court found that Widick had become a holdover tenant on a month-to-month basis after the lease agreement expired and that Widick owed Price past-due rent in the amount of $2,170.96. The court found in favor of Price on Widick's claim for unjust enrichment, noting that the lease agreement specifically required that Price approve any improvements and that voluntarily conferring an unrequested benefit does not amount to unjust enrichment. The court dismissed the remaining claims of both parties.

Widick now appeals from that order of the district court.

ASSIGNMENTS OF ERROR

Widick assigns, restated, that the district court erred in finding that the contract was a lease not a purchase agreement, finding that Widick's improvements to the property had not unjustly enriched Price, and dismissing his claim for the return of the $15,000 initial payment he made to Price. He does not appeal the district court's judgment against him for the unpaid rent.

STANDARD OF REVIEW

An action for rescission sounds in equity, and it is subject to de novo review upon appeal. *Ord, Inc. v. AmFirst Bank*, 276 Neb. 781, 758 N.W.2d 29 (2008). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a decision independent of the findings of the trial court. *Bott v. Holman*, 22 Neb. App. 229, 850 N.W.2d 800 (2014). Where credible evidence is in conflict on a material issue of fact, the appellate court will consider and may give weight to the fact the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

A claim that a court should imply a promise or obligation to prevent unjust enrichment goes by a number of names--"quasi-contract," "implied-in-law contract," or "quantum meruit." *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018). A suit asserting a quasi-contract claim for restitution presents an action at law. *Id*. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Id*. In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id*.

ANALYSIS

*Characterization of Contract as Lease.*

Widick argues on appeal that the district court erred in finding that the agreement was a lease, not a purchase agreement. Relatedly, Widick argues that the court further erred in not finding that Price had breached the purchase agreement. Price argues in response that the agreement in question was a lease, which included an option to purchase the property. Price further argues that

Widick did not exercise that option during the term of the lease. For the following reasons, we agree with the district court that the agreement was a lease, not a purchase agreement. We also agree with the district court that, to the extent the lease included an option to purchase, Widick did not exercise that option during the term of the lease.

When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014). The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015).

The agreement at issue in this case is a lease, not a purchase agreement, as evidenced by the terms' plain and ordinary meanings. The document's first line of the first page identified the agreement as a "Nebraska Residential *Lease* Agreement." (Emphasis added.) Price is identified as "Landlord" while Widick is identified as "Tenant." These terms are ordinarily understood to indicate a leasing relationship and are not commonplace in agreements for the purchase of real estate. The agreement also sets forth a monthly rental rate--rather than a lump sum purchase price. The expectation that a tenant, Widick, makes monthly rental payments to his landlord, Price, pursuant to a "Residential Lease Agreement" plainly indicates that the agreement in this matter was for the lease of the property in question.

We now turn to the question of whether the lease contained an option for Widick to purchase the property and whether Price in some way breached this portion of the parties' agreement. Widick argues that an option to purchase was created by the handwritten language on the agreement's last page that states "purchase option with sales price TBD by mortgage payoff." Price agrees that this language created an option to purchase but contends that she did not breach this provision because Widick failed to exercise the option during the 2-year period covered by the lease.

The terms of an option should be precisely regarded and enforced without addition or alteration. *Master Laboratories, Inc. v. Chesnut*, 154 Neb. 749, 49 N.W.2d 693 (1951). An option is a binding offer to sell or buy, but it is not a purchase agreement. *DaLee Realty, Inc. v. Kuhl*, 209 Neb. 6, 305 N.W.2d 891 (1981). An option to purchase does not in itself create an interest or estate in real estate, but upon its exercise, the option becomes a contract for the purchase and sale of the property. *Struempler v. Peterson*, 190 Neb. 133, 206 N.W.2d 629 (1973). The exercise of an option to buy or sell real estate must be absolute, unambiguous, without condition or reservation, and in accordance with the offer made. *Master Laboratories, Inc. v. Chesnut, supra*.

We have concerns regarding the validity of the purported option to purchase. In particular, we have no idea who wrote "purchase option with sales price TBD by mortgage payoff" or whether that modification occurred before both parties signed the document. The term of the option, any amount of consideration paid to secure the option, and the purchase price of the property are unspecified. Nonetheless, both parties argue that an option to purchase existed.

Regardless of the purported option's validity, Widick did not exercise any option to purchase during the relevant time period. Because an option to purchase property does not ripen into a contract for the purchase of property unless and until the option is exercised, there was no

contract for the sale of property in this matter due to Widick's failure to timely exercise the option. Price, therefore, did not breach the agreement by not selling the property to Widick.

Widick also contends that Price breached the agreement by not maintaining good title. Price's possible failure to maintain good title does not evince a breach of contract because, again, no contract for the sale of property existed in this matter. There is no evidence that Price breached the lease agreement or its alleged option to purchase. Accordingly, we find no error with respect to the district court's order regarding Widick's claims that Price breached the parties' agreement concerning a sale of the acreage.

*Property Improvements.*

Widick alleges that the various improvements he made to the residence and quonset hut unjustly enriched Price and therefore entitle him to compensation for the improvements' value. During trial, Price acknowledged that she was aware of certain improvements that Widick made to the property. The question, however, is whether the improvements *unjustly* enriched Price. We agree with the district court that Price was not unjustly enriched.

A claim that a court should imply a promise or obligation to prevent unjust enrichment goes by a number of names--"quasi-contract," "implied-in-law contract," or "quantum meruit." *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018). Such claims do not arise from an express or implied agreement between the parties; rather, they are imposed by law "when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense." *Id*. at 729, 915 N.W.2d at 792. The mere fact that a recipient has obtained a benefit without paying for it does not of itself establish that the recipient has been enriched unjustly. *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 862 N.W.2d 294 (2015) (citing Restatement (Third) of Restitution and Unjust Enrichment § 2(1) at 15 (2011)).

The language of the lease is dispositive of Widick's unjust enrichment claim. The lease provided that

> Tenant shall make no alterations to the buildings or improvements on the Premises . . . without the prior written consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Agreement.

No evidence was presented by either party that demonstrated that Widick sought or obtained Price's written consent before making any improvements to the property. Moreover, Widick does not allege that a written agreement existed, which provided that any improvements he made would not become Price's property when the lease expired.

Widick made certain improvements to the property without obtaining Price's written consent beforehand. There is little question that he made the improvements based on his assumption that he would one day own the acreage. However, he did so at his own peril. The terms of the lease clearly provide that (a) he was required to obtain written permission before making an alteration or improvement and (b) all improvements would become the property of the landlord

unless otherwise agreed to in writing. Given their agreement, we cannot say that Widick's improvements to the property unjustly enriched Price because Price did nothing to unjustifiably obtain the benefit of the improvements. The mere fact that Widick improved the property does not establish that Price was enriched unjustly. Therefore, we cannot find that the district court was clearly wrong in dismissing Widick's unjust enrichment claim.

*Widick's Initial $15,000 Payment.*

While the parties agree that Widick paid to Price a sum of $15,000 at the time the agreement was entered, they disagree as to its characterization. Widick argues that he paid $15,000 as consideration to secure the purchase agreement. Alternatively, he argues that the $15,000 constitutes the damage deposit if the agreement is construed to be a lease. Price contends that Widick paid $15,000 as consideration to secure the option to purchase the property. Price also contends that characterizing the $15,000 payment as a deposit represents "a new argument" that Widick raises for the first time in this appeal.

However, Widick's original complaint, which remained the operative complaint in this case, described the payment as a deposit stating Widick "also in 2011 paid the sum of $15,000.00 for what was labeled 'Damage Deposit'. This amount exceeded the maximum allowed damage deposit by $13,500.00[.]" Moreover, in our order on direct appeal, we noted that "Widick also argues that the district court erred in failing to order that the unpaid rent he owed to Price should be 'set off' from the $15,000 security deposit he paid to Price when the contract was entered into," but we did not address the argument because Widick failed to properly assign the error. However, because we remanded the case to the district court to specifically address the character of the written agreement, including the deposit provision, and because the district court dismissed Widick's claim with respect to the deposit paid, this appeal is Widick's first opportunity to assign error to the district court's decision.

We relied on the contract's plain meaning in determining that it was a residential lease because the document identified itself as such. We now again rely on the contract's plain meaning to resolve this issue. The terms of the lease support Widick's contention that the $15,000 payment was a deposit and not, instead, consideration to secure an option to purchase:

> 3. **DAMAGE DEPOSIT**. Upon the due execution of this Agreement, Tenant shall deposit with Landlord the sum of <u>FIFTEEN THOUSAND</u> DOLLARS ($<u>15,000.$^{00}$</u>) receipt of which is hereby acknowledged by Landlord, as security for any damages caused to the Premises during the term hereof. Such deposit shall be returned to Tenant, without interest, and less any set off for damages to the Premises upon the termination of this Agreement.

Because the lease specifies that Widick's $15,000 payment to Price was a damage deposit, we hold that the $15,000 payment was a deposit, not consideration for an option to purchase. In so doing, we note that there is nothing in the handwritten language in paragraph 33 that ties any purchase option to the damage deposit.

We therefore reverse the district court's order to the extent that it dismissed Widick's claim that his initial $15,000 payment was a deposit that is subject to return. We note that the district court dismissed Price's claim for damages to the property in its first order dated August 8, 2016.

However, it did award Price $2,170.96 for unpaid rent. Therefore, as an extension of our holding, we direct the district court to offset this amount against the $15,000 awarded to Widick herein. As a result, the district court shall enter judgment against Price in the amount of $12,829.04.

## CONCLUSION

The district court correctly determined that the parties' agreement was a lease, not a purchase agreement, and that Price was not unjustly enriched by virtue of improvements Widick made to the property. However, the district court erred in dismissing Widick's claim regarding the damage deposit, and thus, we reverse this portion of the district court's order and remand thereto with directions to enter judgment in accordance with our findings herein.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.